# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KRISTEN ROGERS and CLAIRE DAVIS, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | Civil Action |
| | File No. _____ |
| v. | CLASS ACTION JURY TRIAL |
| QUICKEN LOANS, INC., | |
| Defendant. | |

## COMPLAINT

Archie I. Grubb, II
W. Daniel "Dee" Miles, III *(pro hac vice application forthcoming)*
Andrew E. Brashier *(pro hac vice application forthcoming)*
Rachel E. Boyd *(pro hac vice application forthcoming)*
BEASLEY, ALLEN, CROW, METHVIN
PORTIS & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104

Michael L. Werner
Matthew Q. Wetherington
Robert N Friedman
THE WERNER LAW FIRM
2860 Piedmont Rd NE
Atlanta, GA 30305

**Attorneys for Plaintiffs**

**Summary**

1.      This is a class action for breach of contract, forfeiture of interest, and

for money had and received.  Defendant Quicken Loans, Inc. ("Quicken")

breached its contract with Plaintiffs Kristen Rogers and Claire Davis ("Plaintiffs")

and other class members through a systematic practice of charging illegal

prepayment penalties in the form of "post-payment" interest on loans insured by

the Federal Housing Administration ("FHA") without first complying with the

uniform provisions of the promissory notes and the FHA regulations governing

these loans.  As a result, Defendant has collected hundreds of millions of dollars in

post-payment interest in an unlawful manner.

2.      Post-payment interest refers to interest that a lender collects **after** the

borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower

pays off the loan in full on August 5, and the lender continues collecting interest

for the remainder of August, the lender has collected post-payment interest from

the borrower.  Any interest collected after the borrower makes payment of the full

unpaid principal is post-payment interest.

3.      A promissory note governs the contractual relationship between

borrowers and lenders, and the FHA regulations require that lenders issuing FHA-

insured loans must include certain uniform provisions in the notes for these loans.

Among other things, the uniform provisions require that "[i]nterest will be charged

on unpaid principal" and interest charges must stop once "the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as **Exhibit 1**, at 1.  The sole exception to those provisions is that lenders may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by [FHA] regulations**." *Id.* (emphasis added).

4.     The FHA regulations permit lenders to collect post-payment interest for the remainder of the month in which full payment is made only when two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the [FHA]**."  24 C.F.R. § 203.558(c) (2014) (emphasis added).

5.     Both conditions must be met before the lender has the right to collect post-payment interest for the remainder of the month in which full payment is made.  For example, if the borrower pays off the loan in full on August 5, and if the lender also provides the borrower with the FHA-approved form, both conditions are met and the lender may collect post-payment interest for the remainder of August.  By contrast, if the borrower pays off the loan in full on August 1, the first condition is not met and the lender may not collect post-payment interest for the remainder of August.  And **regardless** of the date of

3

payment, if the lender does not provide the borrower with the FHA-approved form, the second condition is not met and the lender may not collect post-payment interest for the remainder of August.

6.     The FHA requires use of its approved form because, among other things, the form alerts borrowers, at the time of payment, to the fact that the lender is asserting the right to collect post-payment interest.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8(C), attached as **Exhibit 2**.  And the form also explains the borrower's rights, including the terms under which the lender can collect post-payment interest and how the borrower can avoid paying any post-payment interest.  *Id.*

7.     Although both the uniform provisions of the note and the FHA regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with the FHA-approved form, Quicken does not use the FHA-approved form.  Instead, Quicken omits material language from the approved form, which for all times relevant to this Complaint was not authorized to be removed, and does not fairly disclose to borrowers that it is in their best financial interest to make a payment for the full unpaid principal on the first of the month.

8.     Because Quicken does not use the FHA-approved form as required by both the uniform provisions of the note and the FHA regulations, Quicken has no right to charge post-payment interest from borrowers.  Thus, Quicken has

4

unlawfully collected hundreds of millions of dollars in post-payment interest, and it will continue to do so in the future.  Through this class action, Plaintiffs seek to recover damages for those class members already injured.

### Parties, Jurisdiction, and Venue

9.     Plaintiff Kristen Rogers is a citizen and resident of Florida.  In 2014, Plaintiff Rogers paid off an FHA-insured loan held by Defendant Quicken.

10.     Plaintiff Claire Davis is a citizen and resident of Georgia.  In 2014, Plaintiff Davis refinanced an FHA-insured loan held by Defendant Quicken.

11.     Defendant Quicken Loans, Inc., is a private corporation, which held, or continues to hold, FHA-insured loans.

12.     Defendant Quicken Loans, Inc., is a duly certified company of the state of Michigan that maintains its Principal Office in Detroit, Michigan. Defendant Quicken maintains a registered agent in Georgia where it may be served with process.  Defendant Quicken's Georgia agent is CT Corporation System**,** 289 S Culver St, Lawrenceville, GA, 30046**.**

13.     This Court has subject matter jurisdiction over this class action. Rogers is a citizen of a State different from Quicken, and so are many other class members.  *See* 28 U.S.C. § 1332(d)(2).  And the claims of the class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332(d)(6).

14.     This Court has personal jurisdiction over Quicken.  Among other things, Quicken is registered to and does conduct business in Georgia, holds mortgages on real property in Georgia, has breached contracts with persons located in Georgia, has caused injuries in Georgia, and generally engages in substantial activity in Georgia.

15.     This Court is also a proper venue for this action.  Quicken is subject to personal jurisdiction in the Northern District of Georgia, which "[f]or purposes of venue," means that Quicken resides in this judicial district.  28 U.S.C. § 1391(b)(1), (c).

**Factual Allegations**

**A.    Borrowers Pay for, and the FHA Supplies, Mortgage Insurance to Lenders**

16.     Department of Housing and Urban Development ("HUD") is a department within the executive branch of the United States government.  HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.  The Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

17.     Among other things, the FHA provides mortgage insurance to FHA-

approved lenders for loans on single-family homes.[1]  The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single-family homes.  *Id.*

18.    Mortgage insurance protects lenders against losses caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

19.    To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

20.    Defendant Quicken derives substantial economic benefits from its participation in the FHA mortgage insurance program.

---

[1] *See* U.S. Dep't of Housing and Urban Devt.,
http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.

21.     All lenders, including Defendant Quicken, participating in the FHA

mortgage insurance program have a duty to comply with the mandatory notice

provisions of the FHA regulations.

**B.      The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless they First Provide an FHA-Approved Form**

22.     One uniform provision lenders must include in the promissory note

for every FHA-insured loan addresses the borrower's promise to pay interest for

unpaid principal:

2.     BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

23.     Under this provision, the borrower agrees to pay interest only on the

**unpaid principal**, and once the borrower pays the full unpaid principal, interest no

longer accrues.  This makes sense because, by definition, interest is calculated

from the amount of the outstanding principal loaned by the lender to the borrower.

24.     Other government entities follow the same practice.  For example,

when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department

of Veterans Administration, interest charges stop on the day the borrower pays the

8

full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

25.     However, for nearly thirty years, the FHA has provided a narrow loophole for lenders.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

26.     This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal.  It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed.

27.     Although the FHA permits lenders to penalize borrowers, the FHA has imposed strict limitations on the lender's ability to do so.  The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations.  Chief amongst those regulations is a requirement to provide the borrower with the FHA-approved disclosure form.

28.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

9

5.      BORROWER'S RIGHT TO PREPAY

**Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**.  Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis added), at 2.

29.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.  Alternatively stated, in order for the bank to collect post-payment interest, it must first provide the requisite notice.

30.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

(2) With respect to FHA mortgages insured on or after August 2, 1985, but closed before January 21, 2015, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice. If the prepayment is offered on other than an installment due date, the mortgagee may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the mortgagee so advises the mortgagor, in a form**

**approved by the Commissioner, in response to the mortgagor's inquiry, request for payoff figures, or tender of prepayment.**

(3) If the mortgagee fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, **the mortgagee may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received**[.]

24 C.F.R. § 203.558 (2012) (emphasis added).

31.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, **and only then**, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

32.     For mortgages insured on or after August 2, 1985 and through January 20, 2015, the FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR

(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____     Date: _____
Address: _____     Loan #: _____
_____     FHA#: _____

        This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

        This notice is to advise you of the procedure which will be

11

followed to accomplish a full prepayment of your mortgage.

The _____(mortgagee name)_____ will:

(a)   [ ]   accept the full prepayment amount whenever it is
            paid and collect interest only to the date of that payment;
            or

(b)   [ ]   only accept the prepayment on the first day of any
            month during the mortgage term; or accept the
            prepayment whenever tendered with interest paid to the
            first day of the month following the date prepayment is
            received[.]

[…]

NOTE: It is to your advantage to arrange closings so that the
prepayment reaches us on or before (as close to the end of the
month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact
_____(name and/or department) ___at___(telephone number)__.

_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8(C) at 1-2.

33.   As HUD explains, "[t]he **basic disclosure** language is necessary

because it pertains to the [borrower's] rights under the mortgage."  HUD Housing

Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-

1(C), at 2, attached as Exhibit 3 (emphasis added).

34.   HUD also confirms that the lender "**must disclose** the procedures that

must be followed with respect to the payoff and **must explain** how the amount of

the prepayment has been determined.  **Otherwise**, **the** [lender] **must forfeit any**

12

**interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

35.    HUD expressly instructs lenders that "[**n**]**one of the HUD-required language should be deleted**." *Id.* at 2 (emphasis added).

36.    In sum, pursuant to the uniform provisions of the note and FHA regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**.  If the lender satisfies both of those requirements, then, **and only then**, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.    Lenders Have Collected Billions of Dollars in Post-Payment Interest on FHA-Insured Loans**

37.    From August 2, 1985 through January 20, 2015, lenders, including Quicken, have collected billions of dollars in post-payment interest.

38.    The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune, Apr. 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers, attached as Exhibit 4.  The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average

of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those

borrowers of **$587 million**." *Id.* (emphasis added).

39.    "HUD doesn't get the interest, lenders do.  In effect, **lenders are**

**getting interest for money that isn't outstanding**.  This may not sound like a big

deal, but according to HUD, such post-payment interest charges cost borrowers

**$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages*

*Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015,

http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-

changing-in-2015/, attached as Exhibit 5 (emphasis added).

40.    "This practice . . . has cost consumers staggering amounts, with

estimates ranging into the **hundreds of millions of dollars a year** during periods

when mortgage rates were high."  Kenneth R. Harney, *FHA Will Stop Lenders*

*From Charging Extra Interest When Homeowners Sell or Refinance*, Washington

Post, Sep. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-

lenders-from-charging-extra-interest-when-homeowners-sell-or-

refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html,

attached as Exhibit 6 (emphasis added).

41.    "[T]he clear loser in the full-month interest policy **is 'the one who**

**can least afford it, the consumer**."  Harney, Chicago Tribune, Apr. 11, 2004

(emphasis added).  "**Hundreds of thousands of home sellers have had their**

**pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off." Harney, Washington Post, Sep. 5, 2014 (emphasis added).

42.    Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors." Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330, attached as Exhibit 7 (emphasis added).

43.    All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

44.    On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

45.    On January 30, 2013, the Consumer Financial Protection Bureau

15

issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)."  *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due."  *Id*. at 6444.

46.    This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties…. In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

47.    Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

48.     In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

49.     Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558(a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

50.     Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive. "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

## D.     Quicken did Not Provide the FHA-Approved Form to Rogers Before Collecting Post-Payment Interest

51.     On or about August 08, 2011, Quicken loaned Rogers money for the purchase of a home in Atlanta, GA.  The loan was insured by the FHA, so Quicken is required to comply with FHA regulations with respect to her loan.

52.     Pursuant to FHA regulations, Davis' promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, paragraph 2 titled "Borrower's Promise to Pay; Interest" and paragraph 5 titled "Borrower's Right to Prepay."  *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

53.     In 2014, Davis sold her home.  As part of the sale, she requested that Quicken provide her with a payoff statement so she could pay off the loan.

54.     Quicken provided a payoff statement dated May 20, 2014.  The statement is a form document, in which Quicken uses form language throughout the document and fills in only the particular numbers and address information that corresponds to a specific borrower.  *See* May 20, 2014, Payoff Statement from Quicken to Rogers, attached as **Exhibit 8**.

55.     The form includes the statements "Loan Type," "Principal Balance," "Interest," "Recording Fee," and "Total Amount to Pay in Full," among other uniform fields.

56.     The statement contains the following specific numbers for the Rogers loan payoff:

|    |                              |                 |
|----|------------------------------|-----------------|
| a. | Loan Type:                   | FHA;            |
| b. | Principal:                   | $66,122.67;     |
| c. | Interest:                    | $523.48;        |
| d. | Recording Fee:               | $12.00; and     |
| e. | Total Amount to Pay in Full: | $66,784.27.     |

57.    By representing that Rogers owed $523.48 in interest, Quicken sought to collect interest for the entire month of June, even though the loan was paid in full on June 4, 2014.

58.    On or about June 4, 2014, Rogers paid Quicken $66,784.27, which includes $523.48 in interest.

59.    Because Quicken required Rogers to pay interest for the entire month of June – even though Rogers paid the full unpaid principal on June 4, 2014, Quicken collected post-payment interest.

60.    Quicken did not provide Rogers with the FHA-approved form. Instead, Quicken provided a form that was not FHA-approved as it omitted material terms from the FHA-approved form.

61.     FHA approval of the FHA language in a payoff statement is an express requirement of FHA regulations.

62.    FHA approval of the FHA language in a payoff statement is an express requirement for collecting post-payment interest.

63.    Quicken's standard FHA Payoff Statement states:

This notice is to advise you of the procedure that will be followed to accomplish a full prepayment of your mortgage.

Quicken Loans will:
- Only accept the prepayment on the first day of any month during the mortgage term.
- Accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received.

64.    Quicken's FHA Payoff Statement does not contain the mandatory consumer advisory, "NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month." *See* HUD Housing Handbook, 4330.1 REV-5 Appendix 8(C) at 1-2.

65.     Because Quicken's standard FHA Payoff Statement language does not comply with the mandatory language of the FHA approved form, any post-payment interest collected by Quicken violates the uniform provisions of the note and FHA regulations.

**D.    Quicken did Not Provide the FHA-Approved Form to Davis Before Collecting Post-Payment Interest**

66.    On or about September 21, 2013, Quicken loaned Davis money for the purchase of a home in Atlanta, GA.  The loan was insured by the FHA, so Quicken is required to comply with FHA regulations with respect to her loan.

67.    Pursuant to FHA regulations, Davis' promissory note contains certain uniform provisions found in the note for every FHA-insured loan.  These uniform provisions include, among others, paragraph 2 titled "Borrower's Promise to Pay;

20

Interest" and paragraph 5 titled "Borrower's Right to Prepay." *See* Multistate –

FHA Fixed Rate Note, USFHA.NTE, at 1-2.

68.    In 2014, Davis refinanced her home.  As part of the refinance, she

requested that Quicken provide her with a payoff statement so she could pay off

the loan.

69.    Quicken provided a payoff statement dated May 28, 2014.  The

statement is a form document, in which Quicken uses form language throughout

the document and fills in only the particular numbers and address information that

corresponds to a specific borrower.  *See* May 28, 2014, Payoff Statement from

Quicken to Davis, attached as **Exhibit 9**.

70.    The form includes the statements "Loan Type," "Principal Balance,"

"Interest," "Recording Fee," and "Total Amount to Pay in Full," among other

uniform fields.

71.    The statement contains the following specific numbers for the Davis

loan payoff:

| | | |
|---|---|---|
| a. | Loan Type: | FHA; |
| b. | Principal: | $66,122.67; |
| c. | Interest: | $523.48; |
| d. | Recording Fee: | $12.00; and |
| e. | Total Amount to Pay in Full: | $66,784.27. |

72.    By representing that Davis owed $523.48 in interest, Quicken sought

to collect interest for the entire month of June, even though the loan was paid in

full on June 17, 2014.

73.    On or about June 17, 2014, Davis paid Quicken $66,784.27, which includes $523.48 in interest.

74.    Because Quicken required Davis to pay interest for the entire month of June – even though Davis paid the full unpaid principal on June 17, 2014, Quicken collected post-payment interest.

75.    Quicken did not provide Davis with the FHA-approved form.

76.    FHA approval of the FHA language in a payoff statement is an express requirement of FHA regulations.

77.    FHA approval of the FHA language in a payoff statement is an express requirement for collecting post-payment interest.

78.    Any post-payment interest collected by Quicken violates the uniform provisions of the note and FHA regulations.

## Class Action Allegations

79.    Plaintiffs asserts claims on behalf of themselves and a class of similarly-situated persons pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  *See* Fed R. Civ. P. 23 (b).

80.    Plaintiffs propose the following classes, while reserving the right to modify this definition and/or add additional subclasses.  *See* Fed. R. Civ. P. 23(c).

    a.    <u>Georgia Borrowers of Quicken</u> – any person who had a loan (i) insured by the FHA at any time during the period beginning on

22

August 2, 1985, and ending on January 20, 2015, (ii) that was held by Quicken as of the day payment of the full unpaid principal was made, (iii) for which Quicken collected interest for any period after payment of the full unpaid balance was made; and (iv) financed real property in Georgia;

      i.   <u>Refinance Subclass</u> – any person who had a loan (i) insured by the FHA at any time during the period beginning on August 2, 1985, and ending on January 20, 2015, (ii) that was held by Quicken as of the day payment of the full unpaid principal was made, (iii) for which Quicken collected interest for any period after payment of the full unpaid balance was made for purposes of refinancing the loan, (iv) refinanced their property during the term of their loan; and (v) financed real property in Georgia.

81.   Plaintiffs propose certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue. *See* Fed. R. Civ. P. 23(c).

82.   Plaintiffs satisfy the requirements of Rule 23(a):

a.   <u>Numerosity</u> – The classes are so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes. Many of those properties are serviced by Quicken. Plaintiffs estimates that the class consists of tens of thousands of persons.

b.   <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

      ii.   The promissory notes for FHA-insured loans contain uniform provisions that require lenders to comply with FHA regulations before collecting post-payment interest. The essential issue in this case is whether, before collecting post-payment interest, Quicken complied with

the FHA regulation requiring that it provide the borrower "a **form** approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures**, or tender of prepayment**." 24 C.F.R. § 203.558(b)(2) (2014) (emphasis added).  Because Quicken uses **form** payoff statements, the answer to this essential question will be common to all members of the class.  The forms used by Quicken either are or are not the FHA-approved form and that answer will be true for the entire class.

    iii.       Other common questions include whether Quicken has breached its contracts with borrowers by not providing borrowers with the FHA-approved form before collecting post-payment interest on FHA-insured loans held by Quicken; whether Quicken is liable under Georgia attorney fees statutes for stubborn litigiousness, bad faith, or unnecessary trouble and expenses in requiring Plaintiffs to litigate this matter; whether Quicken is liable under Georgia or Federal usury law for not providing borrowers with the FHA-approved form before charging post-payment interest on FHA-insured loans; and whether Quicken is required, as a matter of equity, to forfeit any unlawfully collected interest.

c.    <u>Typicality</u> – Plaintiffs' claims are typical of the classes' and subclasses' claims.  Plaintiffs' promissory note is not just typical of the rest of the class, but is identical with respect to relevant provisions at issue in this case.  Further, because Quicken uses form payoff statements, Plaintiffs have been subject to conduct that is typical of the rest of the class.

d.    <u>Adequacy</u> – Plaintiffs will adequately protect the class's interests.  Plaintiffs have a genuine interest in protecting the rights of the class and Plaintiffs' counsel is experienced in handling complex class actions.  Indeed, Plaintiffs' counsel has been designated and approved as class counsel in numerous state and federal courts.  Further, because Plaintiffs challenge form payoff statements used by Quicken, the interests of Plaintiffs and the class are aligned.

83.    Plaintiffs satisfy the requirements of Rule 23(b)(2).  Quicken has engaged in standard, uniform conduct toward the class with respect to collecting post-payment interest.  In particular, Quicken uses form payoff statements that do not satisfy the note or FHA regulations.  Thus, Quicken's conduct applies to the class generally.

84.    Plaintiffs separately satisfies the requirements of Rule 23(b)(3):

a.    <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiffs establish that Quicken breached the contracts by not complying with FHA regulations, it will establish liability for all class members, without the need for any additional proof as to liability.  Thus, common issues predominate over individual issues.

b.    <u>Superiority</u> – A class action is superior to other available remedies.  The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action.  Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiffs and other class members to obtain redress.  Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class.  Requiring hundreds of thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient.  It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## Count One – Breach of Contract

85.    Plaintiffs assert a breach of contract claim against Quicken, on behalf of themselves and the Georgia Borrowers of Quicken Class.  Plaintiffs, and all

25

other members of the Georgia Borrowers of Quicken Class, seek damages for

Quicken's improper collection of post-payment interest.

86.    Plaintiffs, and each member of the Georgia Borrowers of Quicken

Class, had a contract with Quicken.  The terms of the contract are set forth in the

promissory note.  The note is a form contract containing certain provisions that are

identical to provisions found in the notes for every FHA-insured loan.

87.    In Section 2 of the note, "BORROWER'S PROMISE TO PAY;

INTEREST," Quicken agreed that "[i]nterest will be charged on **unpaid** principal"

and only "until the full amount of the principal has been paid."  Multistate – FHA

Fixed Rate Note, USFHA.NTE, at 1 (emphasis altered).

88.    In section 5 of the note, "BORROWER'S RIGHT TO PREPAY,"

Quicken agreed that it would charge "interest on the amount prepaid for the

remainder of the month" only "to the extent . . . **permitted by regulations of the**

**Secretary**."  *Id.* at 2 (emphasis altered).

89.    The relevant FHA regulation, titled "Handling Prepayments,"

provides that, "[e]**xcept as set out** [**in this regulation**], monthly interest on debt

must be calculated on the actual unpaid principal balance of the loan."  24 C.F.R. §

203.558(b)(2) (2014) (emphasis added).   "If the prepayment is offered on other

than an installment due date [the first of the month], the [lender] . . . may require

payment of interest to that date, but **only if** [the lender] so advises the [borrower],

26

**in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, **or tender of prepayment**." *Id.* (emphasis added).

90.    In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Quicken is subject to this duty as well.

91.    Quicken breached the contract by collecting post-payment interest payments from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, without first providing the FHA-approved form.

92.    Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, were injured by Quicken's breach and seek damages for Quicken's unlawful collection of post-payment interest.  Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, seek damages for interest collected for the period beyond the date payment of the full unpaid principal was made.

## Count Two – Recovery of Usurious Interest

93.    For an FHA insured loan, the recovery of post-payment interest is governed exclusively by FHA regulations, which provide:

> (2) With respect to FHA mortgages insured on or after August 2, 1985, but closed before January 21, 2015, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice. If the prepayment is offered on other than an installment due date, the mortgagee may refuse to accept the prepayment until the next

installment due date (the first day of the month), or may require payment of interest to that date, **but only if the mortgagee so advises the mortgagor, in a form approved by the Commissioner, in response to the mortgagor's inquiry, request for payoff figures, or tender of prepayment.**

(3) If the mortgagee fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, **the mortgagee may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received**[.]

24 C.F.R. § 203.558 (2012) (emphasis added).

94.     As such, under FHA regulations (24 C.F.R. § 203.558), lenders cannot **lawfully** collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day other than the first of the month and (b) the lender has provided the borrower the FHA-approved form.  If the lender satisfies both of those requirements, then, **and only then**, can the lender **lawfully** collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

95.     Quicken issued FHA insured loans to Plaintiffs, and all other members of the Georgia Borrowers of Quicken Class.

96.     Quicken collected post-payment interest payments on these FHA insured loans from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, without first providing the FHA-approved form.

97.     Because Quicken collected post-payment interest payments from

28

Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, without first providing the FHA-approved form, Quicken's collection of post-payment interest was unlawful.

98.    Georgia law defines usury as "reserving and taking or contracting to reserve and take, either directly or indirectly, a greater sum for the use of money than the lawful interest."  O.C.G.A. § 7-4-1; *Georgia Cash Am., Inc. v. Greene*, 318 Ga. App. 355, 359, 734 S.E.2d 67, 71 (2012).

99.    Georgia usury law also forbids the recovery of a prepayment penalty unless stipulated in the contract.  O.C.G.A. § 7-4-2(b)(2).

100.    It is well-established that the remedy under Georgia law for the collection of usurious interest is a forfeiture of **all interest** collected during the life of the loan.  *In re Kirkland*, 12-71914-WLH, 2015 WL 457862, at *3 (Bankr. N.D. Ga. Jan. 21, 2015) ("The penalty for a usurious loan is a forfeiture of the interest, but the lender may still collect the principal"); *In re Khalif*, 308 B.R. 614, 625 (Bankr. N.D. Ga. 2004) ("The civil penalty for usury is the forfeiture of all interest and other charges owed, although the lender is allowed to recover the principal."); *Aikens v. Wagner*, 231 Ga. App. 178, 179–80, 498 S.E.2d 766, 768 (1998) ("Since the interest rate was unlawful, Wagner was not entitled to any interest, only the unpaid principal."); *Norris v. Sigler Daisy Corp.*, 260 Ga. 271, 273, 392 S.E.2d 242, 244 (1990) ("Since it is clear that the note involved here is illegal, it follows

29

that the interest must be forfeited.").

101.   Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class Class, were injured by Quicken's unlawful collection of post-payment interest and seek damages for Quicken's unlawful collection of post-payment interest.

102.    Under Georgia law, Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class , are entitled to recover from Quicken **all interest** collected during the life of any loan in which Quicken unlawfully collected post-payment interest.

## Count Three – Forfeiture of Unlawful Interest / Money Had and Received

103.   For an FHA insured loan, the recovery of post-payment interest is governed exclusively by FHA regulations, which provide:

> (2) With respect to FHA mortgages insured on or after August 2, 1985, but closed before January 21, 2015, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice. If the prepayment is offered on other than an installment due date, the mortgagee may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the mortgagee so advises the mortgagor, in a form approved by the Commissioner, in response to the mortgagor's inquiry, request for payoff figures, or tender of prepayment.**

> (3) If the mortgagee fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, **the mortgagee may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received**[.]

24 C.F.R. § 203.558 (2012) (emphasis added).

104.   As such, under FHA regulations (24 C.F.R. § 203.558), lenders cannot **lawfully** collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day other than the first of the month and (b) the lender has provided the borrower the FHA-approved form.  If the lender satisfies both of those requirements, then, **and only then**, can the lender **lawfully** collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

105.   As stated above, Quicken collected post-payment interest payments from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, on FHA insured loans without first providing the FHA-approved form.

106.   Because Quicken collected post-payment interest payments from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, without first providing the FHA-approved form, Quicken's collection of post-payment interest was unlawful.

107.   Under Georgia law, an action for money had and received is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another.  *Haugabook v. Crisler,* 297 Ga. App. 428, 431-32, 677 S.E.2d 355, 358-59 (2009).

108.   A claim for money had and received is maintainable in all cases where

31

one has received money under such circumstances that, in equity and good conscience, he ought not to retain it, and it belongs to another. *Haugabook,* 297 Ga. App. at 431-32.

109.   Because Quicken's collection of post-payment interest from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, was unlawful, Quicken is in possession of millions of dollars of unlawfully collected interest that rightfully belongs to Plaintiffs and the other members of the Georgia Borrowers of Quicken Class.

110.   Because Quicken's collection of post-payment interest from Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, was unlawful, Quicken, in equity and good conscience, is not entitled to retain the unlawfully obtained post-payment interest collected from Plaintiffs and the other members of the Georgia Borrowers of Quicken Class.

111.   In fact, FHA regulations (24 C.F.R. § 203.558) expressly state that such unlawfully obtained post-payment interest should be forfeited.  *Id*.  ("If the [lender] fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, **the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received** and to such other actions as are provided in part 25 of this title.") (emphasis added).

32

112.    Consequently, there is no justifiable reason why Quicken should be allowed to retain the unlawfully obtained post-payment interest payments of Plaintiffs and the other members of the Georgia Borrowers of Quicken Class.

113.    Under Georgia law, Plaintiffs, and the other members of the Georgia Borrowers of Quicken Class, are entitled to recover from Quicken all unlawfully collected post-payment interest.

## Relief Requested

114.    Plaintiffs ask this Court to:

a.      Certify this action as a class action, including certifying Plaintiffs as class representative and the undersigned counsel as class counsel;

b.      Grant judgment as a matter of law in favor of Plaintiffs and the Class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

c.      Award Plaintiffs and the Class any damages to which they are entitled including, but not limited to, compensatory damages, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs; and

d.      Order any other relief as the Court may deem proper and just.

This ___ day of May, 2017.

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**

*/s/ Archie I. Grubb, II*
ARCHIE I. GRUBB, II
Georgia Bar No. 314384
W. DANIEL "DEE" MILES*
ANDREW E. BRASHIER*
RACHEL E. BOYD*
* *Pro hac vice applications pending*

218 Commerce Street
Montgomery, AL 36104
334-269-2343
Archie.Grubb@BeasleyAllen.com
Dee.Miles@BeasleyAllen.com
Andrew.Brashier@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com

**THE WERNER LAW FIRM**

*/s/ Matt Wetherington*
MICHAEL L. WERNER
Georgia Bar No. 748321
MATTHEW Q. WETHERINGTON
Georgia Bar No. 339639
ROBERT N. FRIEDMAN
Georgia Bar No. 945494

2860 Piedmont Road
Atlanta, GA 30305
404-793-1693
mike@wernerlaw.com
matt@wernerlaw.com

**Attorneys for Plaintiffs & Proposed Class**

34